**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| CRYSTAL PRATER<br>1608 Riverstone Way<br>Monroe, OH 45050<br><br>     Plaintiff,<br><br>    v.<br><br>TALBERT HOUSE<br>5232 West State Route 63<br>Lebanon, OH 45036<br><br> **Serve Also:**<br> TALBERT HOUSE<br> c/o Neil F. Tilow<br> Statutory Agent<br> 2600 Victory Pkwy<br> Cincinnati, OH 45206<br><br>**-and-**<br><br>ROBERT OFFUTT<br>c/o Talbert House<br>5232 West State Route 63<br>Lebanon, OH 45036<br><br>     Defendants. | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Crystal Prater, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Prater is a resident of the city of Monroe, Butler County, Ohio.

2. Defendant TALBERT HOUSE, ("Talbert House") is a non-profit corporation that conducts business within the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 5232 West State Route 63, Lebanon, OH 45036.

3. Upon information and belief, Defendant Robert Offutt is a resident of Ohio.

4. Talbert House is, and was at all times hereinafter mentioned, Prater's employer within the meaning of the Americans with Disability Act ("ADA") 42 U.S.C. §12101, the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2617 et seq., R.C. § 4101 et seq, and R.C. § 4112 et seq.

5. Within 300 days of the adverse employment actions described herein, Prater filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2022-00112 ("EEOC Charge").

6. On or about May 19, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Prater regarding the EEOC Charge.

7. Prater received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Prater has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Prater has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All of the material events alleged in this Complaint occurred in or around Warren County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiff is alleging federal law claims under the ADA and FMLA.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

15. Prater is a former employee of Talbert House.

16. At all times noted herein, Prater was qualified for her position at Talbert House.

17. At all times noted herein, Prater could fully perform the essential functions of her job, with or without a reasonable accommodation.

18. Prater worked as a Chemical Dependency Counselor at Talbert House from December 2, 2018, until Talbert House unlawfully terminated Prater's employment on or around May 3, 2021.

19. Prater came to the position at Talbert House after an interview with clinical supervisor Defendant Robert Offutt.

20. Offutt was a continual problem for Talbert House, he had to be walked off the job and investigated for two separate issues before Prater was hired.

21. In or around late 2019, Offutt approached Prater and told her he heard a rumor that she was in a relationship with a previous client of hers.

22. Prater admitted this was true, although there was no overlap between her treatment of the patient and their relationship, and they did not date until after Prater ceased treating the previous client.

23. Offutt said he had no intention of reporting Prater.

24. Offutt would require Prater to perform his job duties in exchange for not reporting her.

25. For example, Prater attended Offutt's trainings and became the expert on Talbert House's CareLogic software, despite that Offutt was labeled as the expert in it, creating a tacit blackmail-like exchange between the two.

26. After some time of Prater performing Offutt's duties for him, someone else at Talbert House also learned of her relationship with her previous patient and reported it to administrative director Tommie Johnson.

27. Offutt discussed what to say to Johnson with Prater, and Prater expressed she intended to admit the truth.

28. Offutt asked Prater not to mention he was already aware of the relationship, as it was likely the person who reported the relationship knew of Offutt's knowledge.

29. Prater met with Johnson about the issue, confessed the truth, and was given a final written warning for her conduct.

30. In or around Spring 2020, the COVID-19 pandemic took over the United States.

31. Talbert House had nearly half its staff out due to the disease, and so Prater was frequently picking up shifts and covering for others to help.

32. Through March 2020, Prater's roommate tested positive for COVID-19.

33. Prater called off work from March 12-15, 2020, though was expecting to be out until April 5, 2020, for quarantine.

34. Luckily, Prater's COVID-19 test came back negative.

35. While Prater was out, she spoke with HR benefits specialist Christina Avillan about FMLA for her time.

36. Avillan said FMLA was unnecessary because Prater was to return prior to April 12, 2020.

37. Because of this, Prater was unable to get FMLA leave. This was interference with Prater's FMLA rights.

38. On or around March 15, 2021, Prater unfortunately contracted COVID-19.

39. As a result of suffering from COVID-19, Prater is and was considered disabled within the meaning of R.C. § 4112.01(A)(13) and the ADA.

40. In the alternative, Talbert House perceived Prater as being disabled.

41. In the alternative, the Talbert House perceived that Prater's medical condition constituted a physical impairment.

42. In the alternative, Talbert House perceived Prater's disability to substantially impair one or more of her major life activities, including working.

43. Despite this actual or perceived disabling condition, Prater was still able to perform the essential functions of her job.

44. Despite the fact Talbert House was already aware of (and had reprimanded her for) her previous relationship, Offutt continued to force Prater to perform his job functions.

45. This was not a simple delegation of duties, but rather Offutt continually holding the threat against Prater's job over her.

46. Prater was performing assessments at the time (including many of Offutt's assessments), which had to be completed within fourteen days of client intake.

47. In the midst of these assessments on or around March 15, 2022, Prater caught COVID-19, but Offutt told her she had to complete the assessment as per usual, regardless of her illness.

48. On or around March 23, 2021, Offutt forced Prater to work a partial day in-office to complete both his and her work despite that she was still in COVID quarantine.

49. Prater, knowing the danger this brought to both her colleagues and patients, reported Offutt's demands to Tommie by email – these were protected complaints of disability discrimination and unsafe working conditions caused by forcing her to return while still under COVID quarantine.

50. Offutt was angry that Prater had reported him, so he stopped talking to her at all until the end of her employment. This was retaliation against her protected complaints.

51. Prater also reported the situation and Offutt's previous threats to administrative director Tiffany Thomas and director Cathy Jo Vanderpool.

52. Prater missed a few more days to quarantine in April 2021 due to her daughter contracting COVID-19.

53. On or around May 3, 2021, Prater went into work and tried to get into the building, but her swipe card failed.

54. Human resources ("HR") representative Brion Jones then emailed Prater a termination letter citing attendance as the reason for her termination.

55. The days cited were specifically the days Prater had to miss for her own COVID-19 diagnosis and her daughter's.

56. Prater tried to discuss further with Brion, but her protests were ignored, and her termination stood.

57. The above facts demonstrate that Defendant engaged in a pattern and practice of disability discrimination.

58. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful retaliation.

59. There was a causal connection between Prater's disability and Defendant's termination of Prater.

60. As a result of Talbert House's acts and omissions, Prater has suffered, and will continue to suffer, damages.

## COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA
### (Defendant Talbert House Only)

61. Prater restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

62. Prater suffered from COVID-19.

63. Prater was disabled.

64. In the alternative, Talbert House perceived Prater as being disabled.

65. Prater's condition constituted a physical impairment.

66. Prater's condition substantially impaired one or more of her major life activities including working.

67. Talbert House perceived Prater's condition to substantially impair one or more of her major life activities including working.

68. Talbert House treated Prater differently than other similarly-situated employees based on her disabling condition.

69. Talbert House treated Prater differently than other similarly-situated employees based on her perceived disabling condition.

70. On or about May 3, 2021, Defendant terminated Prater's employment without just cause.

71. Alternatively, Defendant's cited reason for Prater's termination was pretext.

72. Defendant terminated Prater's employment based her disability.

73. Defendant terminated Prater's employment based her perceived disability.

74. Defendant violated the ADA when it discharged Prater based on her disability.

75. Defendant violated the ADA when it discharged Prater based on her perceived disability.

76. Talbert House violated the ADA by discriminating against Prater based on her disabling condition.

77. Talbert House violated the ADA by discriminating against Prater based on her perceived disabling condition.

78. Prater suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

79. As a direct and proximate result of Defendant's conduct, Prater suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: DISABILITY DISCRIMINATION UNDER R.C. § 4112 et seq.
### (Defendant Talbert House Only)

80. Prater restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. Prater suffered from COVID-19.

82. Prater was disabled.

83. In the alternative, Talbert House perceived Prater as being disabled.

84. Prater's condition constituted a physical impairment.

85. Prater's condition substantially impaired one or more of her major life activities including working.

86. Talbert House perceived Prater's condition to substantially impair one or more of her major life activities including working.

87. Talbert House treated Prater differently than other similarly-situated employees based on her disabling condition.

88. Talbert House treated Prater differently than other similarly-situated employees based on her perceived disabling condition.

89. On or about May 3, 2021, Defendant terminated Prater's employment without just cause.

90. Alternatively, Defendant's cited reason for Prater's termination was pretext.

91. Defendant terminated Prater's employment based her disability.

92. Defendant terminated Prater's employment based her perceived disability.

93. Defendant violated R.C. § 4112 when it discharged Prater based on her disability.

94. Defendant violated R.C. § 4112 when it discharged Prater based on her perceived disability.

95. Talbert House violated R.C. § 4112 by discriminating against Prater based on her disabling condition.

96. Talbert House violated R.C. § 4112 by discriminating against Prater based on her perceived disabling condition.

97. Prater suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

98. As a direct and proximate result of Defendant's conduct, Prater suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: RETALIATORY DISCRIMINATION

99. Prater restates each and every prior paragraph of this complaint, as if it were fully restated herein.

100. As a result of the Defendants' discriminatory conduct described above, Prater complained about the disability discrimination she was experiencing.

101. Subsequent to Prater reporting of disability discrimination to her supervisor and employer, Prater's employment was terminated.

9

102. Defendants' actions were retaliatory in nature based on Prater 's opposition to the unlawful discriminatory conduct.

103. Pursuant to R.C. §4112.02(I) and the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

104. Prater suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to the ADA and R.C. § 4112.01 *et seq*.

105. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Prater, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Defendant Talbert House Only)

106. Prater restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

107. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

108. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

109. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

110. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, in preventing the spread of COVID-19.

111. Prater was forced to work in person despite carrying COVID-19.

112. Prater was terminated citing attendance issues on the days Prater took off to quarantine.

113. Defendant's termination of Prater jeopardizes these public policies.

114. Defendant's termination of Prater was motivated by conduct related to these public policies.

115. Defendant had no overriding business justification for terminating Prater.

116. As a direct and proximate result of Defendant's conduct, Prater has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS
### (Defendant Talbert House Only)

117. Prater restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

119. Talbert House is a covered employer under the FMLA.

120. During her employment, Prater qualified for FMLA leave.

121. During her employment, Prater attempted to request FMLA leave by asking Defendant if she qualified to take FMLA leave.

122. Defendant failed to properly advise Prater of his rights under the FMLA.

11

123. Defendant unlawfully interfered with Prater's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

124. As a direct and proximate result of Defendant's conduct, Prater is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

### COUNT VI: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Defendant Robert Offutt Only)

169. Prater restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

171. Offutt aided, abetted, incited, coerced, and/or compelled Talbert House's discriminatory termination of Prater.

172. Offutt aided, abetted, incited, coerced, and/or compelled Talbert House's discriminatory treatment of Prater.

173. Offutt violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

174. Prater suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

175. As a direct and proximate result of Defendant's conduct, Prater has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### DEMAND FOR RELIEF

WHEREFORE, Prater demands from Defendants the following:

a) Issue a permanent injunction:

   i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge Prater's personnel file of all negative documentation;

c) An award against each Defendants for compensatory and monetary damages to compensate Prater for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendants in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Prater's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

                                              Respectfully submitted,

                                              /s/ Evan R. McFarland
                                        Evan R. McFarland (0096953)
                                        Matthew G. Bruce (0083769)
                                                Trial Attorney
                                        Brianna R. Carden (0097961)
                                        **SPITZ, THE EMPLOYEE'S LAW FIRM**
                                        Spectrum Office Tower
                                        11260 Chester Road, Suite 825
                                        Cincinnati, OH 45246
                                        Phone: (216) 291-0244 x173
                                        Fax:    (216) 291-5744
                                        Email: Matthew.Bruce@SpitzLawFirm.com
                                        Email: Evan.McFarland@SpitzLawFirm.com
                                        Email: Brianna.Carden@SpitzLawFirm.com

                                        *Attorneys for Plaintiff Crystal Prater*

## **JURY DEMAND**

Plaintiff Crystal Prater demands a trial by jury by the maximum number of jurors permitted.

                                                                      /s/ Evan R. McFarland
                                                                      Evan R. McFarland (0096953)